Filed 6/14/23  P. v. Bailey CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>MICHAEL ANTHONY BAILEY,<br><br>    Defendant and Appellant. | G061344<br><br>(Super. Ct. No. 21NF1270)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Lance P. Jensen, Judge.  Affirmed.

Heather E. Shallenberger, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters and Charles C. Ragland, Assistant Attorneys General, Daniel Rodgers and Amanda Lloyd, Deputy Attorneys General, for Plaintiff and Respondent.

\*          \*          \*

Michael A. Bailey appeals from a seven-year sentence following his convictions for felony criminal threat and misdemeanor brandishing a deadly weapon. He contends his convictions must be reversed because the trial court abused its discretion in admitting evidence of a prior uncharged incident. As discussed below, we find no abuse of discretion and accordingly, affirm.

I

FACTUAL AND PROCEDURAL BACKGROUND

A. *Witness Testimony*

Jenise C. testified that on the morning of April 9, 2021, she and her husband Kevin C. were checking out of a motel in Buena Park. They were staying in a room on the second story adjacent to the stairs, and their pickup truck was parked almost directly below their room. That morning, as Jenise was moving her belongings to the truck, she encountered appellant, who came out of a room at the bottom of the staircase. Appellant asked Jenise "why we were parked next to his vehicle in his parking lot." Jenise responded that they "were loading up to leave and it is not your parking lot." Appellant then cursed at Jenise, calling her a "white whore and a white bitch and basically telling me that I didn't belong there."

Jenise continued walking to the truck, and moments later her husband Kevin came with a suitcase. After Jenise arrived at the truck, she turned around and saw appellant holding an 18- to 24-inch machete with the blade enclosed in a sheathe. Appellant said he was a "black nigger from the . . . Chicago hood and he wasn't afraid to cut people," and repeatedly told Jenise, "I will cut you, bitch." Jenise turned to her husband, who was loading suitcases, and told him, "Get in the car; we need to leave." After Jenise and her husband got into their truck, she observed appellant approaching the vehicle and "raising the machete at me." She described the raising motion as lifting the machete chest-high before letting it fall to the ground. Jenise was terrified because appellant was saying he was going to cut her. She told her husband to get out of the

2

parking lot, and they drove to the motel's front desk. Jenise informed the front desk clerk about the incident and asked the clerk to call 911, but the clerk declined. They then drove to the parking lot of a nearby restaurant where Jenise called 911. About 15 minutes later the police arrived, and Jenise explained to the officers what had happened.[1]

Kevin testified and confirmed that appellant had threatened his wife. He personally heard appellant call his wife, "'white trash ho'" and saying "he was going to cut her" multiple times. Appellant was holding a machete while making these statements.

Buena Park Police Officer Demetrek Chambers testified that he responded to Jenise's 911 call. As part of the investigation of the incident, Officer Chambers spoke with Jenise, Kevin and appellant. He also retrieved a machete from appellant. Buena Park Police Officer Guillermo Lopez testified he was present when Officer Chambers interviewed appellant. During the interview, appellant told Officer Chambers he was from Detroit.

Appellant did not testify at trial.

B. *Prior Uncharged Incident*

David T. testified that in April 2015, he was a custodian at a middle school in the City of Westminster. Early one morning in April 2015, David observed a male coworker and appellant engaged in a verbal altercation. Appellant, who was holding a 3-inch knife, looked very angry and was yelling. David separated the two men. He also opened a gate so appellant could leave.

Westminster Police Officer David Ferronato testified that early morning on April 8, 2015, he was called to the middle school because janitorial staff had encountered a transient sleeping on school grounds. When he arrived, he spoke with David. David

---

[1]     During Jenise's testimony, the jury saw two surveillance footage videos of the incident.

told the officer that during the altercation, appellant stated he was from Detroit and had cut people before.

## C. *Jury Verdict and Sentence*

A jury found appellant guilty of felony criminal threat against Jenise (Pen. Code, § 422, subd. (a)), and misdemeanor brandishing a deadly weapon at Jenise and Kevin (Pen. Code, § 417, subd. (a)(1)). The trial court sentenced appellant to a total of seven years in state prison.

## II

### DISCUSSION

Appellant contends the trial court abused its discretion in permitting the prosecution to present evidence of the prior uncharged incident involving the school janitor under Evidence Code section 1101 (section 1101).

## A. *Background*

Before trial, the prosecutor moved to admit five of appellant's prior uncharged acts to prove identity, intent or common plan under section 1101, subdivision (b). The acts included: (1) the middle school janitor incident, described above; (2) a 2016 incident at a city park where appellant called probation officers "white trash," and threatened to "kick their ass" and "fuck them up"; (3) a 2017 incident where appellant threatened to beat one of his girlfriend's coworkers in their work parking lot because he thought she drove too close to his car; (4) a 2017 incident in a motel parking lot where appellant threatened two officers and said, "Grab me bitch. I get down. I'm from Detroit mothafucker"; and (5) a 2020 incident where appellant threatened grocery store employees who refused to sell his girlfriend alcohol.

The trial court stated that it would hold off ruling on the admissibility of all five uncharged prior incidents. Nevertheless, the court informed the prosecutor of its tentative ruling that the 2015 middle school incident would not be admissible, but it would provide a definitive ruling the following week. The court, however, warned the

4

prosecutor that "you are not getting all five [prior uncharged incidents] in, but at best you might get one or two."

The following Monday, the court revisited the admissibility of the prior uncharged incidents. After hearing argument, the court concluded that only the middle school incident would be admissible, and to prove intent only. It stated the incident was relevant to a material fact and similar to the currently charged conduct. The court also found that under Evidence Code section 352, the prior uncharged incident was more probative than prejudicial for "the limited purpose of intent. Based on the offer of proof this would be just born of one particular witness testifying and that wouldn't be a mini trial, so to speak, within a trial. The court does not feel it would cause undue consumption of time."

As noted above, at trial the prosecutor introduced evidence of the prior uncharged incident. Before custodian David testified about the incident, the court instructed the jury on other crimes evidence. It informed the jury that if "the People have proved by a preponderance of the evidence that the defendant in fact committed the uncharged offenses" the jurors "may but are not required to consider that evidence for the limited purpose of deciding whether the defendant acted with the intent to commit the acts" alleged in counts 1 and 2. The jury was admonished: "Do not conclude from this evidence that the defendant has a bad character or is disposed to commit crime. If you conclude that the defendant committed the uncharged offenses, that conclusion is only one factor to consider along with all the other evidence. It is not sufficient by itself to prove that the defendant is guilty of count 1 and/or count 2 in this matter. The People must still prove each charge beyond a reasonable doubt." The court repeated these instructions before the jury deliberated.

5

B. *Applicable Law*

Section 1101, subdivision (a) provides that "[e]xcept as provided in this section and in Sections 1102, 1103, 1108, and 1109, evidence of a person's character or a trait of his or her character (whether in the form of an opinion, evidence of reputation, or evidence of specific instances of his or her conduct) is inadmissible when offered to prove his or her conduct on a specified occasion." Subdivision (b) permits the admission of evidence of an uncharged crime for other purposes, such as to prove intent.

Generally, "'[t]he admissibility of other crimes evidence depends on (1) the materiality of the facts sought to be proved, (2) the tendency of the uncharged crimes to prove those facts, and (3) the existence of any rule or policy requiring exclusion of the evidence.' [Citation.] The main policy that may require exclusion of the evidence is the familiar one stated in Evidence Code section 352: Evidence may be excluded if its prejudicial effect substantially outweighs its probative value. Because substantial prejudice is inherent in the case of uncharged offenses, such evidence is admissible only if it has substantial probative value." (*People v. Kelly* (2007) 42 Cal.4th 763, 783.)

"The least degree of similarity (between the uncharged act and the charged offense) is required in order to prove intent." (*People v. Ewoldt* (1994) 7 Cal.4th 380, 402.) "Evidence is admissible to prove intent if there is "'sufficient evidence for the jury to find defendant committed both sets of acts, and sufficient similarities to demonstrate that in each instance the perpetrator acted with the same intent or motive.'" [Citation.]" (*People v. Scully* (2021) 11 Cal.5th 542, 586-587.)

A trial court's admissibility determination under section 1101, subdivision (b), "being essentially a determination of relevance, is reviewed for abuse of discretion." (*People v. Kipp* (1998) 18 Cal.4th 349, 369.) Similarly, an admissibility determination under Evidence Code section 352, like admissibility determinations in general, "is reviewable for abuse [citation] and will not be disturbed except on a showing the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner that

6

resulted in a manifest miscarriage of justice [citation]." (*People v. Rodriguez* (1999) 20 Cal.4th 1, 9-10.)

C. *Appellant Has Not Shown the Trial Court Abused Its Discretion*

Here, as appellant acknowledges, his intent during the incident was a material fact in issue. From David and Jenise's testimony there was sufficient evidence for the jury to conclude appellant committed both the prior uncharged offense and the instant offense. The prior uncharged offense was similar to the current offense. In both cases, appellant was wielding a cutting weapon as he called out a city and stated he had cut people previously. Thus, the similarities between the prior and charged offenses "provided a sufficient basis for the jury to conclude that defendant[ ] acted with the same criminal intent or motive, rather than by '"accident or inadvertence or self-defense or good faith or other innocent mental state."' [Citation.] " (*People v. Daveggio and Michaud* (2018) 4 Cal.5th 790, 827.)

We also conclude that the trial court acted within its discretion in finding the evidence more probative than prejudicial under Evidence Code section 352. The prior uncharged incident was not particularly inflammatory or likely to invoke an emotional bias against defendant. Nor did admission of the evidence necessitate an undue consumption of time. "Furthermore, the trial court limited any prejudicial impact of the uncharged crimes evidence by instructing the jury, [twice] . . . that such evidence could not be considered to prove defendant was a person of bad character or that he had a disposition to commit crime." (*People v. Lewis* (2001) 25 Cal.4th 610, 637.)

Relying on *People v. Balcom* (1994) 7 Cal.4th 414 (*Balcom*), appellant argues that the prior uncharged offense evidence was cumulative and thus not more probative than prejudicial. In *Balcom*, the victim testified the defendant placed a gun to her head and forced her to engage in sexual intercourse, but the defendant denied using a gun or force claiming the victim had voluntarily consented. (*Id.* at p. 422.) The California Supreme Court held that evidence of the defendant's uncharged offenses was

7

inadmissible to prove intent "because the victim's testimony that defendant placed a gun to her head, if believed, constitutes compelling evidence of defendant's intent." (*Id*. at p. 423.) The court explained: "These wholly divergent accounts create no middle ground from which the jury could conclude that defendant committed the proscribed act of engaging in sexual intercourse with the victim against her will by holding a gun to her head, but lacked criminal intent because, for example, he honestly and reasonably, but mistakenly, believed she voluntarily had consented. [Citation.] On the evidence presented, the primary issue for the jury to determine was whether defendant forced the complaining witness to engage in sexual intercourse by placing a gun to her head. No reasonable juror considering this evidence could have concluded that defendant committed the acts alleged by the complaining witness, but lacked the requisite intent to commit rape." (*Id.* at p. 422.)

"Contrary to [appellant's] assertion, this is not a case in which the evidence relating directly to the charged crimes was so compelling on the question of [appellant]'s intent as to render the uncharged crimes evidence merely cumulative on the issue. [Citation.]" (*People v. Lewis*, *supra*, 25 Cal.4th at p. 637.) Even if the jury believed Jenise's testimony that appellant threatened to cut her and raised the machete in her direction, a reasonable jury may still believe that the threat was not credible since: (1) the weapon was sheathed, (2) lifting the weapon to chest height before dropping it was not overly threatening, and (3) appellant did not approach Jenise until she was inside her truck and ready to drive away. (See *People v. Toledo* (2001) 26 Cal.4th 221, 227-228 ["In order to prove a violation of section 422, the prosecution must establish all of the following: (1) that the defendant 'willfully threaten[ed] to commit a crime which will result in death or great bodily injury to another person,' (2) that the defendant made the threat 'with the specific intent that the statement . . . is to be taken as a threat, even if there is no intent of actually carrying it out,' (3) that the threat . . . was 'on its face and under the circumstances in which it [was] made, . . . so unequivocal, unconditional,

8

immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat,' (4) that the threat actually caused the person threatened 'to be in sustained fear for his or her own safety or for his or her immediate family's safety,' and (5) that the threatened person's fear was 'reasonabl[e]' under the circumstances."].) *Balcom* is thus distinguishable. In sum, the trial court did not abuse its discretion admitting evidence of the single prior uncharged incident to prove intent only.

## III

### DISPOSITION

The judgment is affirmed.


DELANEY, J.

WE CONCUR:


SANCHEZ, ACTING P. J.


MOTOIKE, J.

9